# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**LUZ MELENDEZ COLON**, *et al.*,
    Plaintiffs,

v.

**DR. JULIO ROSADO SANCHEZ**, *et al.*,
    Defendants.

Civil No. 16-2853 (BJM)

## OPINION AND ORDER

Luz Melendez-Colon and Milton Ramos-Melendez (collectively "Plaintiffs") brought this diversity action against Dr. Julio Rosado-Sanchez ("Rosado"), his wife, their conjugal partnership, and Rosado's insurer, SIMED, under Articles 1802 and 1803 of the Civil Code of Puerto Rico. Dkt. 1; 31 L.P.R.A. §§ 5141, 5142. Plaintiffs have since amended their complaint. Dkt. 29. Dr. Rosado and SIMED (collectively "Defendants") now move to dismiss this amended complaint based on a forum selection clause in an alleged agreement between the parties that requires Plaintiffs to file any claim against Defendants in Puerto Rico state court. Dkt. 68-1; 83. Plaintiffs opposed Defendants' motion. Dkt. 76. The case is before me on consent of the parties. Dkt. 66. For the following reasons, Defendants' motion is **DENIED.**

## APPLICABLE STANDARDS

In the First Circuit, a motion to dismiss based on a forum selection clause is treated "as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)). In *Atlantic Marine Co., Inc. v. U.S. District Court*, 134 S. Ct. 568, 580 (2013), the Supreme Court held that "the appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." But because the Court "explicitly declined to express a view as to whether a Rule 12(b)(6) motion is a proper alternative," the First Circuit has held that "absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum

selection clauses is still permissible in this Circuit." *Claudio-De Leon*, 775 F.3d at 46 n.3 (citing *Atl. Marine*, 134 S. Ct. at 579–80).

When deciding a motion to dismiss under Rule 12, a court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in the non-movant's favor. *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006); *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2002). Review at this stage is generally limited to the allegations in the complaint, but the First Circuit has recognized an exception: "the district court, may consider 'documents the authenticity of which are not disputed by the parties,' 'documents central to plaintiffs' claim,' and 'documents sufficiently referred to in the complaint.'" *Claudio-De Leon*, 775 F.3d at 46 (quoting *Rivera*, 575 F.3d at 15).

Puerto Rico law follows the federal common law regarding the enforceability of a forum selection clause, so the typical *Erie* inquiry is unnecessary. *Huffington v. T.C. Group, Inc.*, 637 F.3d 18, 23 (1st Cir. 2011) (sidestepping *Erie* in a diversity case because federal law and state law follow the same enforceability standards for forum selection clauses); *Vazquez v. Hosp. Episcopal Cristo*, Civil No. 10-2216, 2011 WL 6748951, at *3 (D.P.R. Dec. 22, 2011); *D.I.P.R. Mfg., Inc. v. Perry Ellis Int'l, Inc.*, 472 F. Supp. 2d 151, 155 (D.P.R. 2007). Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Rivera*, 575 F.3d at 18 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). Two threshold questions arise when a party seeks dismissal based on a forum selection clause: (1) whether the forum selection clause is mandatory or permissive, and (2) whether the scope of the forum selection clause encompasses the claims alleged. *See Claudio-De Leon*, 775 F.3d at 48 (citing *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010)).

If the clause is mandatory and encompasses the claims alleged, the final step is to evaluate whether there is a reason that the presumption of validity should not apply. *Claudio-De Leon*, 775 F.3d at 48–49. Plaintiffs bear a "heavy burden" to make a "strong showing" that the clause is "unreasonable" and should be set aside. *Id*. (citing *Bremen*, 407 U.S. at 10, 15); *Carter's of New*

*Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 292 (1st Cir. 2015). Under *Bremen*, there are four grounds for finding a clause unreasonable and thus unenforceable: "(1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that [plaintiff] will . . . be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *Claudio-De Leon*, 775 F.3d at 48–49 (citing *Bremen*, 407 U.S. at 15, 18).

## BACKGROUND

Plaintiffs are both residents of the state of Georgia. Dkt. 29 ¶¶ A, B. Rosado is a resident of Puerto Rico and is licensed to practice medicine in Puerto Rico. *Id*. ¶ C. SIMED is the insurance company that provides medical malpractice insurance to Rosado. *Id*. ¶ F. According to defendants, SIMED is "an entity organized and existing pursuant to the laws of Puerto Rico[.]" Dkt. 68-1 at 1.

On August 20, 2013, Plaintiffs visited Rosado's office in Puerto Rico because Melendez was experiencing back pain. Dkt. 76 at 4. During this visit, Melendez signed what plaintiffs understand to be "informed consent papers[.]" *Id*; Dkt. 75-1 (English translation). The agreement is titled "Clarification as to Medical-Legal Liability and the Medical Malpractice Crisis in Puerto Rico." Dkt. 75-1 ("Waiver Document"). The forum selection clause is in a section titled "Unilateral, Voluntary and Partial Waiver of Claims for Damages." Dkt. 75-1 at 3. It explains that a physician may be liable to a patient for medical malpractices and states, in relevant part:

> Judicial claims for compensation for damages can be made by: the patient, and /or persons who may be affected by the damages that may occur. As such, and being strictly motivated by the understanding of the problem caused by the deregulation of claims for damages in medical-legal cases, without any pressure whatsoever from second or third parties and using the mechanism of a **FREE AND VOLUNTARY STATEMENT ON MY PART** as an individual mechanism of affirmation which ratifies the commitment to make treatment and medical interventions which are highly complex, risky and of such caliber available and viable in Puerto Rico *YOU AND THE PERSONS INVOLVED* in the decision for this surgery **freely and voluntarily waive the right** which you have to a claim without limits to be discussed herein. **Your free and voluntary waiver also applies to any claim** asserted outside the courts of Puerto Rico and limits the specter of any claim to the Puerto Rico Courts of Justice. This specifically includes the

> voluntary and unilateral waiver of any claim in the Federal Courts of the United States of America.

Dkt. 75-1 at 3 (emphasis original). Melendez, her husband, and a secretary all signed at the bottom of the document. *Id.* at 5.

Plaintiffs met with Rosado again on February 15, 2014 to discuss surgery on Melendez's spine. Dkt. 29 ¶ 1. At the meeting, Melendez signed and initialed a Pre-Operative Evaluation Note that included a reminder that she had signed the Waiver Document on her visit to the office. The translated paragraph states:

> The purpose of this visit was for the orientation of the patient and their family members, next of kin and/or advisers. If you wish to schedule a date for surgery you can do so at this time, although Dr. Rosado still my [sic] provide you with the document for the NAPR's Informed Consent for your Surgery. Also, you are reminded that you received and signed a document for the Partial Unilateral and Voluntary Waiver of Claims for Damages during your first visit to this office. These documents should be provided by you to your family members, next of kin and/or advisers prior to the formalization of an agreement for surgery.

Dkt. 75-2 at 1–2 ("Evaluation Note"). Rosado performed an initial surgery on Melendez's spine on February 25. *Id.* ¶ 2. A second surgery was performed one month later. *Id.* ¶ 4.

After this second surgery, Melendez left Puerto Rico and returned to Georgia where she experienced severe pain and was hospitalized. *Id.* ¶¶ 21, 22. Plaintiffs sought legal assistance and a third-party medical evaluator to examine Melendez's medical records and to evaluate Rosado's work. *Id.* ¶¶ 46, 55, 56. Based on the third-party evaluation, plaintiffs filed this medical malpractice action against defendants, alleging Rosado acted negligently while Melendez was under his care. *Id.* ¶ 57, 59.

Plaintiffs make no mention of the Waiver Document in their Amended Complaint, nor do they include any consent or waiver forms as exhibits. Dkt. 29. The court learned of the Waiver Document through Defendants' motion to dismiss. To consider the Waiver Document as part of Melendez's medical records would require an inference that the document is, in fact, included therein—an inference that defendants are not entitled to as the movant. Likewise, the Waiver Document is not central to Melendez's claim because, with or without the document, Melendez may still have a viable claim for medical malpractice damages against defendants. The document

would only serve to dictate where this claim may be heard and the amount of damages that may be recovered, not whether Melendez has a legal right to collect these damages.

Nevertheless, the parties do not dispute the authenticity of the Waiver Document. Plaintiffs allege that Rosado obtained Melendez's informed consent for certain surgeries. Dkt. 29 ¶ 57. In their motion, Defendants assert that Melendez visited Rosado's office and signed a series of documents on August 20, 2013, including the Waiver Document, which according to defendants, was "not part of the informed consent process[.]" Dkt. 68-1 at 3; Dkt. 83 at 2–3. Plaintiffs concede that they did sign documents on August 20, 2013, but they assert that these documents were "informed consent papers[.]" Dkt. 76 at 4. In other words, the parties contest the characterization of the documents but not the authenticity of their signatures, so the documents may be considered.

After the deadline for filing dispositive motions elapsed, Defendants moved for leave to file a motion to dismiss, asserting that the forum selection clause contained in the Waiver Document signed by Melendez on August 20, 2013 divests the court of subject matter jurisdiction. Dkt. 68; *see* Dkt. 75-1. The court partially granted and partially denied Defendants motion for leave, clarifying that "challenges to venue because a forum selection clause are properly brought under Rule 12(b)(6)" in the First Circuit, but "[b]ecause motions under Rule 12(b)(6) may be raised at trial, *see* Fed. R. Civ. P. 12(h)(2)(C), the court would entertain defendants' tendered motion only to the extent that it asserts a failure to state a claim." Dkt. 78.

## DISCUSSION

The inquiry begins with the forum selection clause's text. The Waiver Document explicitly limits Plaintiffs to the "Puerto Rico Courts of Justice" and precludes suing in federal court. Dkt. 75-1 at 3. This exemplifies a mandatory forum selection clause, which prohibits litigation outside the designated forum. *Claudio-De Leon*, 775 F.3d at 46 (citing *Rivera*, 575 F.3d at 17). The language of the clause makes clear that it "applies to any claim" in the paragraph explaining the physician-patient relationship and possibility of litigation in the event a signatory believes medical malpractice occurred. Dkt. 75-1 at 3. Plaintiffs' claim is just that, Rosado committed malpractice in treating Melendez, so their claim lies squarely within the clause's scope.

This brief analysis leaves Plaintiffs with a single option: to show why the presumptively valid forum selection clause should not apply. *See Claudio-De Leon*, 775 F.3d at 48–49. *Bremen* acknowledges fraud and overreaching; unreasonableness; difficulty or inconvenience in proceeding in the selected forum; and public policy as valid grounds for setting aside a forum selection clause. *Claudio-De Leon*, 775 F.3d at 48–49 (citing *Bremen*, 407 U.S. at 15, 18).

Plaintiffs first argue that public policy opposes such clauses. Dkt. 76 at 5–8. Plaintiffs' most compelling proof that Puerto Rico opposes the forum selection clause was, through some oversight, not formally translated in its entirety for the court to consider. Dkt. 76 at 5; *see* D.P.R. Civ. R. 5(g) (requiring all non-English documents presented or filed to be accompanied by a certified English translation). Regulation 7617, propagated by the Office of the Patient Advocate of the Commonwealth of Puerto Rico, prohibits physicians from soliciting patients to agree to forum selection or other legal clauses in informed consent paperwork or other documents. *See* Dkt. 76 at 5; *Vazquez*, 2011 WL 6748951, at *1 ("Puerto Rico has statutorily prohibited forum selection clauses presented to patients as part of the informed consent process in obtaining medical treatment.") (citing P.R. Dep't of Health, Regulation 117-A, amended by Office of the Patient's Advocate of P.R., Regulation 7617 of Nov. 21, 2008). The First Circuit "has noted that Regulation No. 7617 reflects a strong public policy in Puerto Rico today that forum selection clauses in informed consent forms are unenforceable." *Segura-Sanchez v. Hosp. Gen. Menonita, Inc.*, 953 F. Supp. 2d 344, 346 (D.P.R. 2013) (citing *Rivera v. Centro Medico de Turbo, Inc.*, 575 F.3d 10, 18 (1st Cir. 2009)); *Garcia–Mones v. Groupo HIMA San Pablo, Inc.*, 875 F. Supp. 2d 98, 105–06 (D.P.R. 2012) (citing *Centro Medico del Turabo, Inc. v. Departamento de Salud*, 2011 TSPR 35, 181 D.P.R. 72, 77 n.1 (P.R. 2011) (acknowledging Regulation 7617 as banning forum selection clauses as part of informed consent documents)). As stated, non-movants in a motion to dismiss enjoy all reasonable inferences in their favor. *See McCloskey*, 446 F.3d at 266. Plaintiffs contend that the Waiver Document constitutes informed consent paperwork, which Defendants dispute.

Informed consent is consent given "with full knowledge of the risks involved and the alternatives." *Informed Consent*, BLACK'S LAW DICTIONARY (10th ed. 2014). For a medical procedure, consent is "informed" when knowingly made "after a physician or other healthcare provider discloses whatever information a reasonably prudent provider in the medical community would give to a patient regarding the risks involved in the proposed treatment or procedure." *Id.* Melendez signed the Waiver Document about five months before her first surgery with Rosado,

and the document does not refer to any specific details or risks about a potential treatment or medical procedure. *See* Dkt. 75-1. Concluding that the Waiver Document is an informed consent form would be unreasonable. Furthermore, Melendez signed the Pre-Operative Evaluation Note, which more closely resembles informed consent on February 15, 2014, just before the surgery with Rosado. *See* Dkt. 75-2. The Evaluation Note describes the diagnosis, surgery, alternate treatment, and risks, with Melendez's initials beside each line. *Id.* The Evaluation Note further clarifies the characterization of the Waiver Document, referring to it and to "the NAPR's Informed Consent for your Surgery" as separate documents. *Id.* at 2. Although informed consent paperwork may take different forms, the Waiver Document was likely not an informed consent document. It contains no information about the surgery Melendez underwent or its associated risks, and Plaintiffs do not contend that Rosado presented the Waiver Document with the informed consent paperwork.

Regulation 7617, however, applies to more than informed consent paperwork forms. The Regulation refers to documents more generally, and the courts have held that forum selection clauses in medical admission documents are similarly unenforceable. *See Prince v. Hosp. HIMA San Pablo–Caguas,* 943 F. Supp. 2d 280, 284 (D.P.R. 2013) ("Certainly, the enactment of Regulation No. 7617 is a testament to the public policy of prohibiting the enforcement of forum selection clauses included in admissions documents for medical treatment."); *Segura-Sanchez*, 953 F. Supp. 2d 344; *Vazquez,* 2011 WL 6748951. These three cases, in which forum selection clauses were unenforceable, dealt with clauses signed during emergency situations. *Segura-Sanchez*, 953 F. Supp. 2d at 346. In *Prince*, the plaintiff signed a forum selection clause presented to her after an emergency airlift to a hospital equipped with intensive care equipment for the delivery of her premature baby. *Prince,* 943 F. Supp. 2d at 281. In *Segura-Sanchez*, the patient's husband signed a forum selection clause in the admissions packet while seeking admission to the emergency room for his wife, who suffered from abdominal pain. *Segura-Sanchez*, 953 F. Supp. 2d at 346 (citing Docket No. 71-3). In *Vazquez*, a mother signed a clause for her son after rushing him to the emergency room to seek treatment for severe testicular pain; treatment culminated in emergency surgery the following morning. *Vazquez,* 2011 WL 6748951, at *1 (citing Docket No. 25 at 1–4).

This shared distinction emphasizes a legal reality: consent to a forum selection clause must be knowing and voluntary for it to be enforceable. *See Prince*, 943 F. Supp. 2d at 282–83. In an emergency, patients are focused not on legal intricacies but on receiving treatment as soon as possible. *See, e.g.*, *Rivera*, 575 F.3d at 21. Regulation 7617 protects those patients, enabling them

to focus on potentially life-saving procedures without fear that a hospital might exploit their pain, fear, or illness to gain a legal advantage. *See id.* Regulation 7617's focus on informed consent paperwork and courts' subsequent extension to medical admissions paperwork in emergency situations reinforces this protective notion. Melendez, in an unsworn statement, declared "on August 20th., 2013, I visited for the first time the office of Defendant, Dr. Julio Rosado Sanchez, because I was in great need of treatment for a very painful condition in my spinal cord." Dkt. 76-1 at 1. She stated, "Julio Rosado Sanchez's Secretary, gave me some papers to fill and sign without explaining anything to me about the contents of those papers, and without giving me a diagnosis of my condition . . . ." *Id.* Melendez's husband also made an unsworn statement attesting to his wife's "very painful condition" when she sought treatment from Rosado. Dkt. 76-2 at 1. The same day, after Melendez signed the Waiver Document, Rosado prescribed "some spinal blocks in her spinal cord" to treat the pain. Dkt. 76-1 at 2. Unlike the cited cases, Melendez went to Rosado's office rather than an emergency room, but the location of the treatment does not determine whether an emergency exists. Melendez's description that she needed to sign the papers for the doctor to treat her "very painful condition" establishes a parallel with the plaintiffs who signed hospital admissions paperwork to receive treatment. The forms she signed in August 2013, including the Waiver Document, constituted the primary step in treating that pain, much like admissions paperwork at a hospital. The remaining question is whether Melendez's condition was analogous to those faced in *Prince, Vazquez,* or *Sanchez-Segura*. The court finds that it was; Melendez, experiencing serious pain in her spine, went to Rosado to relieve that pain. He gave her three spinal blocks and acknowledged that surgery was likely in Melendez's future, which indicates the severity of her back problem and the potential level of pain she experienced. *See* Dkt. 76-1 ¶¶ 10–11.

      The evident correlation between the paperwork and treatment touches on a second ground for setting aside a forum selection clause: fraud or overreaching. *Claudio-De Leon*, 775 F.3d at 48 (citing *Bremen*, 407 U.S. at 15). Fraud is a material misrepresentation by one party on which the other party is justified in relying. *Rivera*, 575 F.3d at 20 (quoting Restatement (Second) of Contracts, § 164 (1979)). Overreaching is a more "'nebulous concept'" in which one party unfairly uses its "overwhelming bargaining power or influence over the other party." *Id*. at 21 (quoting *Haynsworth v. The Corporation*, 121 F.3d 956, 965 (5th Cir. 1997)). Overreaching is more than mere inequality between parties; overreaching occurs when that inequality is exploited in a way

that the court will not tolerate. *Maldonado-Falcón v. Hospital Español Auxilio Mutuo De Puerto Rico, Inc.*, No. 12-1907, 2014 WL 609664, *5 (D.P.R. Feb. 18, 2014) (citing *Rivera*, 575 F.3d at 21–22; *Outek Caribbean Distribs. v. Echo, Inc.*, 206 F. Supp. 2d 263, 267 (D.P.R. 2002)).

Overreaching alone is not enough to set aside a forum selection clause, but suggestions of it strengthen the public policy argument against include forum selection clauses to patients seeking treatment for manifest pain. *See Maldonado-Falcón*, 2014 WL 609664, at *5. As the First Circuit noted in *Rivera*, "Rivera's relationship with the hospital grew out of a grave medical condition. He was likely more focused on that medical condition than the significance of the documents that he was asked to sign. He was not thinking about possible lawsuits." *Rivera*, 575 F.3d at 21. In that case, however, the First Circuit found that Rivera had sufficient opportunities to consider the clause's ramifications. *Id.* at 22. The forum selection clause used clear language, appeared in bold print, was delineated from the rest of the form with a box, and required Rivera to initial directly beside it. *Id*. Rivera twice signaled assent to the clause, and the five-day interim between assents gave him the opportunity to select another hospital, consult an attorney, or otherwise reconsider his assent away from the pressure of the hospital. *Id.* In effect, the form's design emphasized the significance of the clause in a way that Rivera was able to focus on its significance. The court in *Maldonado-Falcón* distinguished *Rivera* when it set aside a forum selection clause for overreaching. The forum selection clause was not distinguished from the surrounding text in anyway, it did not require the patient to place initials beside it, and the plaintiff did not have the opportunity to reconsider assent outside of the hospital because of his medical condition. *Maldonado-Falcón*, 2014 WL 609664 at *5. Most significantly, of course, Regulation 7617 promulgated Puerto Rico public policy against including forum selection clauses prior to the consent forms at issue in *Maldonado-Falcón*. *Id.* at *3–4.

Melendez and her husband allude to the pressure she felt to sign the Waiver Document. Melendez stated that no one explained what the papers contained, and she believed that she would not be treated for her pain if she did not sign them. Dkt. 76-1 at 1–2. According to Melendez, neither Rosado nor his secretary explained to her the significance of the papers. *Id.* Her husband concurred. Dkt. 76-2 at 1–2. The forum selection clause Melendez signed is in the same small font as the rest of the document and the operative language is in boldface, but the part explaining what Melendez would waive by signing is in roman type. Dkt. 68-1 at 2. There is neither a box nor a space for initials. *Id.* The Evaluation Note Melendez and her son initialed and signed in February

mentions the Waiver Document, but the Evaluation Note appears to include characteristics of an informed consent form. *See* Dkt. 75-2. The Evaluation Note includes a diagnosis, the surgery area, surgery purpose, and a tentative date for the surgery; though it also refers to a distinct informed consent form, it implies that second form is not mandatory. *Id.*[1] This supports the Evaluation Note either being treated as an informed consent form or as hospital admissions paperwork, preparing Melendez for her upcoming surgery. In either case, Regulation 7617 and legal precedent precludes the court from considering any assent to that form as assent to a forum selection clause. Moreover, the paragraph does not ask for assent or confirmation but rather reminds the signatory to give the Waiver Document to family or advisers prior to the agreement to surgery. Dkt. 75-2. It treats the signature as a foregone conclusion. The court will not construe such a perfunctory reference, devoid of substance, as assent to waiving legal rights.

Melendez, in severe pain, went to Rosado to seek treatment for her back. As the First Circuit observed in *Rivera*, patients like Melendez are "more focused on [their] medical condition than the significance of the documents" placed before them for signature. *Rivera*, 575 F.3d at 21. This understanding motivated the Puerto Rico Office of the Patient Advocate to establish Regulation 7617, moved the Puerto Rico Supreme Court to acknowledge that rule in *Centro Medico del Turabo*, 181 D.P.R. at 77 n.1, and caused the District of Puerto Rico to extend that precedent to medical admissions paperwork. Accordingly, the forum selection clause will not be enforced because public policy in Puerto Rico staunchly opposes the inclusion of forum selection clauses in paperwork that serves as a barrier to receiving medical treatment in emergencies.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED.**

---

[1] "The purpose of this visit was for the orientation of the patient and their family members, next of kin and/or advisers. If you wish to schedule a date for surgery you can do so at this time, although Dr. Rosado still my [sic] provide you with the document for the **NAPR's Informed Consent for your Surgery**. Also, you are reminded that you received and signed a document for the Partial Unilateral and Voluntary Waiver of Claims for Damages during your first visit to this office. These documents should be provided by you to your family members, next of kin and/or advisers prior to the formalization of an agreement for surgery." Dkt. 75-2 at 1–2.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of March, 2019.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge