# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**LUZ MELENDEZ COLON**, *et al.*,
    Plaintiffs,

v.

Civil No. 16-2853 (BJM)

**DR. JULIO ROSADO SANCHEZ**, *et al.*,
    Defendants.

## OPINION AND ORDER

Following a trial on the merits, the jury in this case returned a verdict against defendant Dr. Julio Rosado Sanchez ("Dr. Rosado") on plaintiff Luz Melendez Colon ("Melendez") and her son Milton Ramos Melendez's ("Ramos") medical malpractice claims brought under Article 1802 and Article 1803 of the Civil Code of Puerto Rico. 31 L.P.R.A. §§ 5141, 5142. In accordance with the jury's verdict, judgment was entered in favor of Melendez in the amount of $204,000.00 and in favor of Ramos in the amount of $46,000.00 for a total judgment of $250,000.00. Dkt. 175. Before the court are Dr. Rosado's *Motion for Judgment as a Matter of Law and/or Alternative Motion for a New Trial and/or for Remittitur*, Dkt. 183, and Melendez and Ramos's response, Dkt. 187. Dr. Rosado replied. Dkt. 190.

Because I conclude that a reasonable jury could not have found that this case was timely filed, Defendants' Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50 is **GRANTED**.

## BACKGROUND

The following facts are related in the light most favorable to the verdict.

Melendez is a seventy-nine-year-old retired nurse who is now in the early stages of Alzheimer's. At some point in 2013, Melendez began to suffer from severe back pain. On August 20, 2013, Melendez and her husband visited Dr. Rosado's office. Melendez continued seeing Dr. Rosado, and on February 15, 2014, she and Dr. Rosado discussed a planned spinal surgery that Dr. Rosado would perform to relieve the pain in Melendez's back. He performed the surgery on February 25, 2014, but Melendez continued to experience pain. Herminio Ramos, Melendez's

other son, testified that Melendez's pain steadily increased to the point that she would "scream of pain." Dkt. 183-1 at 8:25 (Herminio Ramos trial transcript). On March 25, 2014, Dr. Rosado operated on Melendez's spine a second time. Melendez continued to experience pain. When Melendez was moved to a rehabilitation center in April, her pain remained at a level that caused her to scream and seemed to disorient her. Dkt. 183-1 at 11:1–18 (Herminio Ramos trial transcript). She suffered complications and was hospitalized between June 10 and June 19, 2014, during which time Dr. Rosado evaluated her condition. He recommended a third surgery. Herminio Ramos testified that the family did not want Dr. Rosado to operate on Melendez a third time. He testified, "it was decided, the family decided that she was not going to be treated by the doctor anymore. First because we had lost trust in the doctor and second, after two operations, her status was contrary to what it should have been, to what the outcome should have been." Dkt. 183-1 at 52:21–53:1 (Herminio Ramos trial transcript). The family came to this decision at some point during her hospitalization. By June 24, 2014, the family decided that Melendez would seek further treatment in Atlanta, where Plaintiff Ramos lives. Ramos told Dr. Rosado that he would need Melendez's medical records from Dr. Rosado's office in order to transfer his mother to Atlanta.

Ramos sent Dr. Rosado several text message requests for the medical record in July, which referred to his ongoing efforts to secure the records. Ramos stated that the new doctor in Atlanta would need the records, but Dr. Rosado's secretary estimated it could take a year to produce them. Ex. 2B; Ex. 5B; Ex. 6B. On July 11, 2014, Herminio Ramos and Melendez filed a complaint against Dr. Rosado with the Medical Disciplinary and Licensing Board and made a request for the medical records. On August 8, 2014, they presented a complaint at the Court of First Instance in San Juan, Puerto Rico. Ex. 7. The judge ordered a hearing, and Dr. Rosado's attorney brought the medical record to the hearing and gave it to Herminio Ramos on August 22, 2014. Neither Melendez nor her family made any extrajudicial claim against Dr. Rosado.

Ramos moved his mother to Atlanta the following month and found medical care for her at the Emory Spine Center. A doctor referred them to neurosurgeon Dr. Daniel Refai, and they were able to make an appointment for surgery to be performed in November 2014. Because of

Melendez's health, they had to get preliminary clearances and missed the November appointment. Melendez ultimately received her third surgery, this time from Dr. Refai, on December 18, 2014. Melendez began to recover after the surgery, and she no longer felt pain so severe that she could not sleep. Dkt. 183-3 at 26:13–21 (Melendez trial transcript). Within six weeks, she could walk almost one mile after having not been able to walk. Dkt. 178 at 11:15–18 (Dr. Refai trial transcript). At her last post-operative appointment in November 2015, Plaintiffs and their family asked Dr. Refai to review Melendez's medical records, which he had not needed to perform his operation. Dr. Refai received English translations of the records in mid-2016. He wrote a report summarizing his findings dated September 21, 2016. The report criticized a number of decisions Dr. Rosado had made in the course of the two spinal surgeries he performed on Melendez.

Melendez and Ramos filed suit against Dr. Rosado for medical malpractice on October 19, 2016. The parties went to trial in March 2019. At the close of Plaintiffs' case, Dr. Rosado moved for judgment as a matter of law. The motion was taken under advisement at that time. Dr. Rosado renewed the motion after the close of evidence, and the motion was held in abeyance. The jury returned a verdict finding Dr. Rosado liable for medical malpractice and not liable for a breach of informed consent laws. The jury awarded Melendez $204,000 and Ramos $46,000 for a total of $250,000. Pursuant to the parties' stipulation, defendant SIMED is liable for $100,000 of the total amount. Dkt. 175. The jury, as expressed in a verdict form, made a specific finding that plaintiffs lacked "the necessary knowledge to file suit at any time before October 19, 2015, or the plaintiff could have had this necessary knowledge before that date if they exercised proper diligence." Dkt. 158 at 1. Dr. Rosado now moves for judgment notwithstanding the verdict on the medical malpractice claim. Dkt. 183.

**LEGAL STANDARD**

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, if a party has been fully heard on an issue during a jury trial and a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, an opposing party may file a motion for judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. P.

50(a). Rule 50(b) enables a party to renew that motion for a judgment as a matter of law "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged." Fed. R. Civ. P. 50(b).

"In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id*. The party renewing a motion for judgement as a matter of law pursuant to Rule 50(b) must "have moved for judgment as a matter of law at the close of all evidence." *Ginorio v. Contreras*, Civil No. 03-2317, 2008 WL 11424136, at *2 (D.P.R. June 13, 2008), *aff'd sub nom. Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508 (1st Cir. 2009) (citing *Keisling v. SER-Jobs for Progress, Inc.*, 19 F.3d 755, 758 (1st Cir. 1994)). "In addition, this motion must include every claim upon which the party bases its request for judgment as a matter of law. Failure to do so is a 'fatal omission.'" *Ginorio*, 2008 WL 11424136 at *2 (citing *Sanchez v. Puerto Rico Oil Company*, 37 F.3d 712, 723 (1st Cir. 1994)). The party may also move for a new trial under Rule 59 or remittitur in the alternative.

"[A] jury's verdict must be upheld unless the facts and inferences, viewed in the light most favorable to the verdict, point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have [returned the verdict]." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009) (quotation marks omitted) (citing *Borges Colon v. Roman-Abreu*, 438 F.3d 1, 14 (1st Cir. 2006)). The court must affirm the jury's verdict "'unless the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment.'" *Id*. The court should not evaluate witness credibility or the weight of the evidence; it must view the facts in the light most favorable to the verdict and defer to the jury's determination of any factual issues. *Ciolino v. Gikas*, 861 F.3d 296, 299 (1st Cir. 2017); *Long v. Fairbank Reconstruction Corp.*, 701 F.3d 1, 4 (1st Cir. 2012).

## DISCUSSION

"[T]he principle of the statute of limitation should be seen objectively, since through it 'the stability of property and certainty of other rights are guaranteed.'" *Ortiz v. Municipio de Orocovis*, 113 D.P.R. 484, 487–88, 13 P.R. Offic. Trans. 619, 622 (P.R. 1982) (quoting Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10th ed., 1963, T. 1, Vol. 2, p. 834). The statute of limitations for a medical malpractice claim is one year. 31 L.P.R.A. § 5298. A personal injury claim accrues to an injured person and the statute of limitations begins when she has "both notice of her injury and knowledge of the likely identify of the tortfeasor." *Espada v. Lugo*, 312 F.3d 1, 3 (1st Cir. 2002). This includes "knowledge of . . . a causal link between the wrong and some harm." *Villarini-García v. Hospital del Maestro*, 8 F.3d 81, 84 (1st Cir. 1993). The plaintiff does not need actual knowledge, however, "where, by due diligence, such knowledge would likely have been acquired." *Id.* Dr. Rosado argues for judgment notwithstanding the verdict, on the grounds that (1) Melendez and Ramos's claims were barred by the statute of limitations; (2) Melendez and Ramos were not diligent in pursuing their claims; and (3) Melendez and Ramos did not adequately meet their burden to prove medical malpractice. Dkt. 183 at 2.

Knowledge is the key to the statute of limitations. Because Plaintiffs filed suit against Dr. Rosado more than one year after the injury occurred, they bear the burden of proving they lacked the requisite knowledge that would have begun the statute of limitations more than a year before filing this claim. *Alejandro-Ortiz v. P.R. Elec. Power Auth.*, 756 F.3d 23, 27 (1st Cir. 2014) (citing *Rivera Encarnación v. Estado Libre Asociado de Puerto Rico*, 113 D.P.R. 383, 13 P.R. Offic. Trans. 498, 501–02 (P.R. 1982)). In this case, knowledge may be actual or constructive. A plaintiff has actual knowledge when she is "aware of all the necessary facts and the existence of a likelihood of a legal cause of action." *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 14 (1st Cir. 1997). Constructive knowledge, often referred to as "deemed knowledge" in medical malpractice cases, inquires whether a reasonable person in the same situation as the plaintiff would have sufficient awareness of the necessary facts and a cause of action, given the same level of notice and the exercise of reasonable care. *Id.* A third aspect of knowledge, where the tortfeasor makes assurances

sufficient to convince the plaintiff not to file suit, does not apply in this case. Dkt. 183 at 16; *see also Alejandro-Ortiz*, 756 F.3d at 27 (explaining that a tortfeasor's assurances to, representations to, or concealment of necessary facts from the plaintiff may toll the statute of limitations).

Plaintiffs filed this case on October 19, 2016. The question, then, is whether a reasonable jury could have concluded that plaintiffs, exercising the required due diligence, did not acquire the requisite knowledge until October 29, 2015.

Plaintiffs answer this question in the affirmative. Plaintiffs contend that they lacked knowledge of the necessary facts and notice of the legal claim until September 21, 2016, the date they received Dr. Refai's report. Dkt. 187 at 7. Plaintiffs cite *Espada* for support. In *Espada*, the plaintiff underwent a mastectomy and subsequently suffered from lymphedema. *Espada*, 312 F.3d at 4. Lymphedema can be a common side effect of breast cancer surgery but in this case resulted from the surgeon's choice to perform a riskier, more radical surgery than necessary. *Id.* at 5. The First Circuit held that the plaintiff had knowledge of the physical injury soon after her surgery, but her claim did not accrue until years later, when a doctor informed her of the legal injury, namely that a less risky surgery was available. *Id.* This knowledge of the lymphedema without notice of the potential medical malpractice which may have caused it created a possibility that a jury could "permissibly conclude" her complaint was not time-barred, so her claim could survive the defendant's Rule 50(a) motion. *Id.* Plaintiffs seek to emphasize the similarities between the injury in *Espada* and in this case. To that end, Plaintiffs argue that Dr. Refai's opinions on the standard of care and Dr. Rosado's performance concern "highly technical and complex" issues "beyond the ken of a lay person," so Plaintiffs "could not speculate as to Dr. Rosado's potential liability prior to receiving Dr. Refai's report." *Id.* at 9.

Dr. Rosado, for his part, contends the record mandates a finding that plaintiffs had knowledge of their claim by late June 2014. Herminio Ramos testified that around June 20, 2014, "it was decided, the family decided that she was not going to be treated by the doctor anymore. First because we had lost trust in the doctor and second, after two operations, her status was contrary to what it should have been, to what the outcome should have been." Dkt. 183-1 at 52:21–

53:1 (Herminio Ramos trial transcript). His brother concurred; when Plaintiff Ramos spoke with Dr. Rosado after the second surgery, Dr. Rosado suggested a medication, a third surgery, and then rehabilitation. "My response to that was that mommy was not going back to Health South and nor was she going to be undergoing surgery here and that I wanted to take her to Atlanta." Dkt. 183-2 at 12:20–23 (Milton Ramos trial transcript). Defendants argue forcefully that the undisputed bad outcomes of Dr. Rosado's two surgeries, and Plaintiffs' expression of lack of trust, require a finding that Plaintiffs had the requisite knowledge. Defendants highlight that Melendez experienced increasing pain after each of Dr. Rosado's two surgeries, culminating in what she called a physical and emotional "rock bottom" after the second surgery on March 24, 2014. *See* Dkt. 183-3 at 15:9–10 (Melendez trial transcript). Defendants' argument accords with the Puerto Rico Supreme Court's summation that "it is not the moment when the damage is caused [that] determines when the statute of limitations begins to run but the moment when the aggrieved party becomes aware of it." *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 21 P.R. Offic. Trans. 342, 357 (P.R. 1988) (citing *Prieto v. Geigel*, 115 D.P.R. 232, 243–47 (P.R. 1984)).

A jury could reasonably find, as the First Circuit recognized in *Espada*, that pain after a surgery, while severe, might be an accepted side effect (even though the brothers' testimony makes the opposite conclusion, that there was actual knowledge, at least equally reasonable). Plaintiffs argue that they still had no reason to suspect Dr. Rosado was negligent despite no longer trusting him to care for Melendez because Dr. Rosado had not guaranteed results and increased pain was a potential complication of the surgeries. Dkt. 187 at 8. Herminio Ramos's testimony implies that Plaintiffs and their family were indeed aware that *something* was not right. Melendez likely knew of her physical injury, like the plaintiff *Espada*, but whether she or Plaintiff Ramos knew of the legal injury is questionable. Though it is a close call, a jury might still resolve in favor of Plaintiffs, as of June 20, 2014. *See Ciolino*, 861 F.3d at 299.

As a fallback, Defendants propose the claim accrued by August 22, 2014, when Plaintiffs received Melendez's medical records from Dr. Rosado after a protracted effort to obtain them. At trial, Plaintiffs contended that the records were relevant to the statute of limitations question. *See*

Dkt. 190 at 6–7. Later, however, Plaintiffs disavowed any connection between the two, claiming they believed the records would be necessary for Dr. Refai's treatment. Dkt. 187 at 8–9. But Dr. Refai testified that he did not need the records or her medical history for treatment. Dkt. 178 at 49:16–50:4 (Dr. Refai trial transcript). Moreover, had Dr. Refai wanted to review the records, he would have been unable to do so because they were in Spanish, and Plaintiffs did not translate them until 2016. *Id.* at 12:10–13. Defendants point to their explicit loss of confidence in Dr. Rosado and to Plaintiffs' changing story on the significance of the medical records as evidence supporting concealment of their actual knowledge of the injury and tortfeasor's identity. Dkt. 183 at 14. Plaintiffs state, time and again, that they did not know "of the wrong and a causal link between the wrong and some harm." *Villarini-García*, 8 F.3d at 84. Such a contention is difficult to entertain in light of the lost confidence and decision to remove Melendez from Dr. Rosado's care while still pursuing a third surgery elsewhere. Plaintiffs argue that, although they knew of her increased pain, they did not know that a tortfeasor was responsible. Dkt. 187 at 10–11; *see Colon-Rodriguez v. Colon-Martinez*, 275 F. Supp. 2d 133, 134 (D.P.R. 2003) (citing *Riley v. Rodriguez de Pacheco*, 119 D.P.R. 762, 19 P.R. Offic. Trans. 806 (1987)). While this may be true, the passing of the months makes it more difficult for Plaintiffs to overlook the crucial question of due diligence.

If, as Plaintiffs claim, they lacked actual knowledge of their claim, the law requires them to prove they also lacked constructive knowledge despite exercising due diligence to uncover that claim. *See Rodriguez-Suris*, 123 F.3d at 16. "The one-year period does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit." *Villarini-García*, 8 F.3d at 84. In *Villarini-García*, the First Circuit held that a jury could reasonably find that the plaintiff exercised due diligence when she regularly visited specialists and doctors over the course of four years for her back pain, which she did not realize was the result of a mole removal surgery in which the doctor also removed muscle tissue. *See id.* at 83–84. Diligence, as demonstrated in *Villarini-García*, constitutes "reasonable active efforts to seek answers and clarify doubts." *Estate of Ayala v. Phillip Morris, Inc.*, 263 F. Supp. 2d 311, 317 (D.P.R. 2003). Simply "waiting for answers to fall from the sky" is not enough. *Id.* If a plaintiff makes no effort or fails

to specify what reasonable efforts she made, then she has not met her burden. *See Corey-Lanuza v. Medic Emergency Specialties, Inc.*, 229 F. Supp. 2d 92, 99 (D.P.R. 2002) (granting summary judgment where plaintiff did not specify any reasonable efforts taken to identify the defendant before filing interrogatories).

Here, the evidence of due diligence between obtaining the medical records on August 22, 2014 and asking Dr. Refai to review those records in November 2015 is nonexistent. Plaintiffs waited until Melendez's final post-operative treatment to ask Dr. Refai to review the records, which still were not translated from Spanish, and then waited an additional eleven months for Dr. Refai's report before filing suit. Dkt. 187 at 9, 12–13. Plaintiffs delayed more than a year before asking Dr. Refai to review those records, and, when they asked, they still had not translated the records to English for a neurosurgeon they knew did not speak Spanish. Plaintiffs argue that it was reasonable to never ask Dr. Refai what he thought had happened, to never inquire into that marked difference merely because Melendez remained on the road to recovery. This is not the law.

"Once plaintiff had knowledge of the damage he could not wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment." *Ortiz*, 113 D.P.R. at 487, 13 P.R. Offic. Trans. at 622. Plaintiffs contend that they did not yet know the source of the damage, but they surely knew of its existence. Melendez's conditions after her second and third surgeries, for example, were radically different. After the second surgery, her pain increased to the point that she felt like she had hit "rock bottom," but she "slept like a baby" and improved rapidly after her third surgery in December 2014. Dkt. 183-3 at 15:9–10, 26:17. After both the first and second surgeries, Melendez continued to scream from the pain in her back; after the third, she called Dr. Refai an "angel." The Puerto Rico Supreme Court makes clear that a plaintiff may not delay once he has become aware of an injury, "'even if at the time its full scope and extent cannot be weighed.'" *Delgado Rodríguez*, 121 D.P.R. 347 (quoting B. M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 638-640, Pubs. J.T.S. (2d ed. 1986)). "The aggrieved person need not know at that time the full extent of the harmful consequences of the bodily injuries; that can be established later in the course of the legal

proceedings held for the purpose of seeking redress." *Vera Morales v. Bravo Colón*, 161 D.P.R. 308, 318–19, 2004 T.S.P.R. 30 (P.R. 2004)).

Plaintiffs contend they were justified in waiting for Melendez to completely recover before consulting Dr. Refai in spite of the holding in *Delgado Rodríguez*. Plaintiffs explain that they focused on her treatment and rehabilitation and claim they "could not reasonably be expected to do anything more to find out whether Dr. Rosado had complied with the standard of care, such that they could responsibly assert their cause of action." Dkt. 187 at 9. In *Villarini-García*, the First Circuit found that the plaintiff exercised due diligence during the long delay between the injury and the lawsuit because she regularly saw doctors and specialists for the injury done, which had occurred when a doctor exceeded the scope of the surgery. *See id.* at 83–84. The plaintiff in *Espada*, like Melendez, suffered an injury that was a potential side effect of surgery. *Espada*, 312 F.3d at 5. Pain can certainly be a side effect of surgery, but Melendez experienced a deterioration in her condition that had her screaming in agony until Dr. Refai's treatment and which resulted in their lack of trust in Dr. Rosado. After Dr. Refai's surgery, in sharp contrast, she could sleep easily and could walk three-quarters of a mile after just six weeks. *See* Dkt. 183-3 at 26:17 (Melendez trial transcript); Dkt. 178 at 11:15–18 (Dr. Refai trial transcript).

A reasonable person, in this situation, might not know she had a legal injury, but she would question the first surgeries and seek answers. She would take some level of action. That is how the plaintiff in *Espada* behaved; even after her doctor assured her that the swelling "was nothing," she "continued her investigation and discovered that the swelling in her arm was lymphedema." *Espada*, 312 F.3d at 4. Plaintiff then communicated with the National Lymphedema Network and met with doctors to discover the cause of her lymphedema. *Id.* at 5. Melendez, Ramos, and their family did not translate the medical records, they did not speak to the neurosurgeon they trusted to perform a third operation, and they did not explain this inaction. Plaintiffs, rather than arguing the facts that would support an exercise of due diligence, concede by omission to not taking any action until Dr. Refai discharged Melendez.

This delay is the type the Puerto Rico Supreme Court explicitly forbade in *Delgado Rodríguez* and again in *Vera Morales*. A claim does not wait to accrue until the full scope of an injury becomes clear or treatment ends; plaintiffs must take "reasonable active efforts" to seek answers. *Estate of Ayala*, 263 F. Supp. 2d at 317. Plaintiffs did nothing between August 22, 2014 and November 2015. The failure to even translate the medical records during that period caused further delay such that Dr. Refai did not complete his report until September 21, 2016, more than two-and-a-half years after Dr. Rosado's surgeries. Where a plaintiff either does not act or does not specify what actions she took for the finder or fact, she has not met her burden to prove due diligence. *Corey-Lanuza*, 229 F. Supp. 2d at 99.

Accordingly, as a matter of law, Plaintiffs' medical malpractice claim against Dr. Rosado was barred by the statute of limitations. The parties put the question to the jury because "the issues of due diligence and adequate knowledge are still ones for the jury so long as the outcome is within the range where reasonable men and women can differ." *Villarini-Garcia*, 8 F.3d at 87. Reasonable men and women cannot differ on the statute of limitations inquiry here because Plaintiffs did not meet their burden to prove due diligence. The evidence in this case, even viewed in the light most favorable to the jury's verdict and determination of the facts, does not support a finding of due diligence on behalf of Melendez or Ramos in the more than fourteen months between when they secured Melendez's medical records and when they asked Dr. Refai to review those records. *See Ciolino*, 861 F.3d at 299.

## CONCLUSION

The court finds that Dr. Rosado has met his burden in showing that the evidence in the record, taken in the light most favorable to Melendez and Ramos, can lead a reasonable person only to the conclusion that Dr. Rosado is entitled to judgment. Defendants' motion for judgment as a matter of law is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of August, 2019.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge